## RICHARD T. SCHERCK *v.* BLUCHER MONTGOMERY.

1. CORPORATIONS. *Stock. Sale. Certificate.*

   A party entitled to a certificate of stock in a corporation may assign his right, and the assignment is good between the parties, although not evidenced by a transfer on the books of the company.

2. SAME. *Code 1892, § 844. Laws 1894, p. 46.*

   Code 1892, § 844, and laws 1894, p. 46, amendatory thereof, providing that stock in corporations shall be transferrable by indorsement and delivery of the stock certificate and the registry of such transfer on the books of the corporation, simply protect creditors and fix liability for unpaid subscriptions for stock.

3. SAME. *Mandatory injunction..*

   The assignee of a right to have a certificate of stock in a corporation issued may sue in equity, and is entitled to a mandatory injunction enforcing the right, and may make adverse claimants of the stock co-defendants with the corporation.

FROM the chancery court of Lincoln county.

HON. HENRY C. CONN, Chancellor.

Montgomery, the appellee, was complainant in the court below; Scherck, appellant, and the Brookhaven Progressive Cotton Oil Co. were defendants there. From a decree, overruling his demurrer to the bill, Scherck appealed to the supreme court. The opinion states the case.

*H. Cassedy* and *A. C. McNair*, for appellant.

The contention of the appellee is that the contract of sale was an executed one and that the bill was filed to force the oil mill company to recoznize Montgomery, who claims through Miazza, as a stockholder and to require it to issue the certificates for the twelve shares of stock subscribed for by Scherck.

The contention of the appellant is that the contract was

executory and that the bill seeks to enforce specific performance.

The true controversy is between Scherck and Montgomery; the relief sought is the cancellation of Scherck's claim to the stock as owner, the quieting of complainant's supposed title, and that a specific performance of the contract be decreed by requiring the company to issue the certificates to complainant. The corporation may be a proper party to this suit, but Scherck is the necessary party.

Section 844 of the code, as amended by acts of 1894, p. 46, provides that "the stock in all corporations shall be transferable by the indorsement and delivery of the stock certificate and the registry of such transfer in the books of the company." We do not rely upon any by-law of the corporation. Similar provisions to the one quoted have been incorporated in the by-laws of corporations of this state and in other states, and it has been held that such provisions were only for the benefit of the corporation itself. This statute rises to a greater dignity than the mere by-laws of a private corporation. It is, in its nature, an addition to the statute of frauds with reference to the sale and transfer of the title to personal property and relates to a specific kind of chattel, to-wit, stock in all corporations. So in order to pass the legal title to stock in a corporation the two requisites are necessary, the endorsement of the stock certificate and the registry of the transfer in the books of the company. So it has been held that to pass the legal title it is necessary for the registry of the transfer in the books of the company. 2 Beach on Priv. Corp., sec. 647.

Beach says, " Where the charter or by-laws of a corporation provide that its stock shall be transferable only on the books of the company, the title to and ownership of the stock can only pass by a transfer on the books."

As to creditors, one and only one method of transferring his stock is permitted to the stockholder, and that method is

pointed out in the statute.  *Krider* v. *Banks*, 72 Miss., 469; Taylor on Priv. Corp. secs. 587, 590.

Up to the time of the issuance of the stock certificate, there is no method, under our statute, by which shares of stock in corporations can be legally and equitably transferred from one person to another. The statute was enacted for the protection of the corporation, the promoters, the stockholders, creditors and dealers and investors in this class of choses in action. The mere right, not evidenced by a certificate or other writing, is not legally transferable. The spirit of the law is manifest. It is intended that such commodities shall not be placed on the market until there is some tangible evidence of their existence. The usual method of transferring stock in corporations, *i. e.*, investing the purchaser with the title thereto, both legal and equitable, is the indorsement of the certificate and the registry of the transfer on the books of the company. The stockholder only has the right to register the transfer in the absence of other provisions of the general law or some by-law of the corporation, or some other person properly authorized by power of attorney so to do by the owner. It is usually the custom of stockholders to give the transferee an irrevocable power of attorney, or sign such a power in blank.

There was no authority given to Montgomery or Miazza by Scherck. The note to Young did not authorize a transfer of the stock on the books of the company, and even if it be held that this was sufficient, it was revoked before the power was exercised. So we have here, not a sale and transfer of the legal title to the stock, but an agreement to sell, an executory contract with other essential acts to be performed, acts in which the corporation has or had no concern whatever. The legal title to the stock is still in Scherck, and before it can pass from him, the certificate must be issued to him, be indorsed by him and by him registered in the books of the company. The corporation has no interest in the controversy. It is a mere

stakeholder and looks on, regarding Scherck as the owner of the stock.　2 Beach on Priv. Corp., § 682.

What will be the effect of a decree in favor of complainant? Simply the very same result as would follow by compliance with the statute.　He seeks to have the legal title vested in him, which could be done by issuing the stock certificate to Scherck and by Scherck indorsing it and registering the transfer in the books of the company.

If the bill had sought such relief—that is, if the complainant had asked that the stock certificate be issued to Scherck, and that Scherck be required to indorse it and register such transfer on the books of the company, would it not be a bill to enforce specific performance of an executory contract?

We submit that the bill and exhibits show a mere executory contract to sell, no matter what counsel might call it.　If this is true, then the effort of the complainant is to enforce the specific performance of this executory contract; in other words, to cause, by indirect means, the necessary, essential acts to be done to pass the legal title to the stock to complainant.

"It is a general rule that a court of equity will not decree a specific performance of a mere personal covenant sounding in damages, nor of a contract relating to personalty where compensation may be had at law.　Such contracts will be enforced only where the property has some artificial nature, or where the breach of the personal indemnity would be productive of irreparable injury."　*Hoy* v. *Hansborough*, Freeman's Chan. (Miss.), 533 ; *Scott* v. *Billgerry*, 40 Miss., 119.

Specific performance will not be decreed for the sale of corporate stock unless some advantage is to be obtained, some peculiar advantage not obtainable save in the possession of the specific stock.　"If the stock contracted to be sold is easily obtained in the market, and there are no particular reasons why the vendee should have the particular stock contracted for, he is left to his action for damages."　Cook on Stockholders, sec. 338.　And further, same section, at page 463 : "Specific

performance may also be said to be granted where a corporation is ordered by a court to issue certificates of stock to its stockholders." Also sec. 63.

Specific performance of a contract to sell shares of stock will not be enforced where it appears that the shares were designed to give control of the bank. *Folls' Appeal*, 91 Penn. St., 434 (36 Am. Rep., 671, and note).

Nor will specific performance be decreed unless the stock has some peculiar value not possessed by other stock. *Eckstein* v. *Downing*, 64 N. H., 248 (10 Am. St. Rep., 404).

Specific performance of a contract for the sale of stock will not be decreed unless there are particular reasons why the purchaser should have the particular stock contracted for, but he will be left to his action for damages. *Ryan* v. *McLane*, 91 Md., 175 (50 L. R. A., 501, and exhaustive note).

"As stock and bonds of a corporation are mere chattel interests, specific performance of a contract to sell or purchase will not be decreed when the remedy at law is adequate, and no other ground for equitable interference exists, and the remedy at law is deemed adequate whenever the value of the stock is fixed and definite and the stock itself is for sale in open market; for then the would-be purchaser could secure it from others if he really desires it, and any loss he suffers will be readily compensated in pecuniary damages." 2 Am. & Eng. Dec. in Equity, 580, 581, 582, 584; Lawson on Contracts, sec. 476.

The Alabama case, relied upon by the appellee in the court below (*Birmingham National Bank* v. *Roden*, 11 South. Rep., 883), was a controversy between the bank and the original subscriber, and the bill was maintained upon the principle which accords compensation as alternative relief on bills filed for specific performance, which principle, the court says, is recognized in that state. The court says: "The overruling of respondent's demurrer to the bill of complaint was in accord with these principles and must be sustained."

This does not seem to be the rule in this state. See the principal case (*Scott* v. *Billgerry*, 40 Miss., 119).

Montgomery had no contract with the corporation, but with Scherck, and Scherck's contract is an executory one alone; and in this state, where the principle mentioned by the Alabama court is not carried so far in a court of· equity, the demurrer should have been sustained. However, the bill in this case asks no alternative relief, unless such relief could be contained in the general prayer.

The other case relied upon, *State* v. *Carpenter*, 51 Ohio St., 83 (46 Am. St. Rep., 556), the controversy was between the subscriber for stock and the corporation, where the corporation refused to issue certificates, and while the court held that mandamus was not the remedy, it was for the reason that the subscriber had an adequate remedy at law and an equitable remedy based upon a statute of that state, and could choose between the two. There was also a relation of trust between the officers of the corporation and the shareholder, which alone would give a court of equity jurisdiction. See also, on the same subject, *Freon* v. *Carriage Co.*, 42 Ohio St., 30 (51 Am. Rep., 794, and extensive note). The very point is made in these cases, and the relief denied for the reason that the shareholder had an adequate remedy at law.

*Mc Willie & Thompson* and *Chrisman & Brennan*, for appellee.

The bill is not one for the specific performance of any contract between the complainant and the defendant, Scherck. The contract between the parties was completed and does not need specific performance. The contract was so thoroughly completed that nothing whatever remains to be done by Scherck, and nothing is asked in the bill to be required of him. We do not ask that he be enjoined to do anything, and seek only that he shall be adjudged not to be interested in the stock which he sold, and which is now owned by complainant. The

true nature of the bill is this : It is a suit by Montgomery, as the owner of twelve shares of the capital stock of the defendant corporation, to compel the corporation to issue to him a certificate evidencing his ownership of the stock and right to participate in the management of the corporation as a stockholder. The bill shows and avers, as distinctly as it can be done, that the complainant is the owner of twelve shares of stock in the defendant corporation ; that he has no written evidence of this ownership from the corporation itself ; that the corporation declines to issue him the certificate simply because of the controversy between him and the defendant, Scherck, as to the ownership of these shares of stock, which the corporation itself admits have been fully paid for.

Has the complainant a complete and adequate remedy at law to compel a recognition by the corporation of his rights as a stockholder and to issue him a certificate ? Cook, in his late work on Corporations, Vol. I., sec. 390, tells us that the authorities are in irreconcilable conflict on the question of whether a mandamus lies to compel a corporation to allow a registry on its books of a transfer of stock, though the weight of authority is that mandamus will not lie under such circumstances. Now it can make no difference in principle whether the right asserted be to have a registry on the books of the corporation of a transfer of an old certificate of stock or to have an original certificate issued. See direct authority for this position, *State* v. *Carpenter*, 51 Ohio St., 83; s.c., 46 Am. St. Rep., 556. It is said in the opinion of the court just cited (46 Am. St. Rep., 559): "The reasons which conduce to the holding that a suit in equity is the most satisfactory and complete remedy to accomplish the registration of transfers of stock apply equally when the object sought is the issue of certificates originally." Cook goes on and discusses the matter of mandamus, and criticises the reasons why it will not lie, and he seems to approve the line of authorities, the minority, which hold that a mandamus should be maintained, stating, however, that the strongest

argument against granting a mandamus is to be found in the fact that a bill in equity can be maintained to specifically order a registry of a transfer of stock, and that in the equity suit the rights of the corporation and of adverse claimants can be fully and finally adjusted. He then tells us in sec. 391 of his most excellent work, that a suit in equity is the surest, most complete and just remedy for compelling a corporation to register a transfer of stock and for adjusting the various conflicting rights of claimants or other parties, stating that it is a remedy applicable to almost all cases arising under a refusal of a corporation to allow a registry of transfers of stock; that the case will be decided on equitable principles, etc., and in sec. 392 we are told by this author that an action at law for damages is an old and well established remedy of a stockholder who has applied to the corporation for a registry of a transfer and has been refused; but that the most appropriate and best remedy is a suit in equity. As aforesaid, if a stockholder who has purchased shares of stock in a corporation, and has received from the seller a certificate, and the corporation refuses to recognize the transfer and to make proper entry on its books, equity will entertain a bill by the assignee to enforce his rights. The case of *Birmingham National Bank* v. *Roden*, 97 Ala., 404; s. c., 11 So. Rep., 883, is directly in point, and maintains that a suit in equity is the proper remedy, citing not only 3 Pom. Eq. Jur., sec. 1412, to which we presently call the court's attention, but also Cook on Stock and Stockholders, sec. 479, and *Ib.*, sec. 74. The latter section states (as quoted by the Alabama court): "A subscriber for shares of stock, in case the contract of subscription was regularly entered into, may, if the corporation refuse to issue him a certificate, have his action in equity for specific performance," etc. Of course, under the bill, complainant has all the rights against the corporation which Scherck held as a subscriber before his assignment of the right. If there be specific performance involved, it is of the contract between Scherck and the corporation. Surely, in this case where

Montgomery has purchased from Scherck the shares which Scherck subscribed and paid for, without receiving a certificate, the complainant may seek equitable relief against the corporation. We are told, too, by Pomeroy in the third volume of his Equity Jurisprudence, sec. 1412, that cases frequently arise where corporations or joint stock companies refuse to recognize the right of assigning stock; that it is well settled that although the law may give some remedy, as that of damage, for the refusal, equity has jurisdiction to compel a corporation to make the transfer and issue certificates. More pertinent authorities to the question now before the court could not be found.

The power of the stockholder to dispose of his stock is not derived from the corporation, but is inherent in him as proprietor. The corporation can do no more than regulate the mode of its exercise, for its own government. *Bank* v. *Pinson*, 58 Miss., 421; *Goyer* v. *Wildberger*, 71 Miss., 438. The laws of Mississippi do not recognize the power of any corporation to prohibit Scherck from selling that which he owns; nor will the rights of the assignee from him be defeated because of a failure of a perfectly valid sale and transfer of his property to be in compliance with some rule of the corporation.

Thompson, in his work on Corporations, vol. 2, secs. 2387, 2388, 2389, 2390, 2391, 2392, 2393, 2394, and 2395, lays it down that unregistered transfers are good between the parties to them, and that the corporation must recognize them. There seems to be some apparent conflict of opinion as to whether such transfers, those not in conformity with the by-laws of the corporation, invest the transferee with a mere equitable, as distinguished from a perfect and legal title, and the authorities are to the effect that such a transfer as between the parties passes the entire title, legal and equitable. There are some authorities which hold that as against the corporation, the transferee takes only an equitable title. The author, Thompson, sec. 2393, tells us that the distinction between the equitable and legal

ownership of corporate shares is analogous to the difference between the legal and equitable ownership of land; that the legal owner of shares in a corporation in the owner in whose name the shares stand on the books of the corporation, and that the equitable owner is the one who, being the beneficiary, that is the real owner, is not registered as such on the corporate books, and who must, if the corporation refuses to register him, go into a court of equity and compel them to do so. Note what the transferee, whose assignment is not in conformity with the by-laws of the corporation, must do. Go into a court of equity and compel the corporation to recognize him, and that is exactly what Montgomery has done in this case, and it is worse than idle to talk about specific performance, as between complainant and Scherck, of the contract by which the latter assigned the shares of stock involved in this controversy, a subject wholly foreign to this suit, and the author further tells us in the last paragraph of the section just cited, that the transferee has a perfect title without reference to conformity to by-laws as against everybody except the corporation itself. Montgomery, therefore, has a perfect title as against Scherck, and how can he set up the rules of the corporation as against a perfect title to the shares of stock involved in this suit? The corporation makes no point on its by-laws; we are discussing and considering the separate demurrer of Scherck. Code, 1892, § 844, as amended laws 1894, p. 46, was intended only for the protection of creditors of the corporation and to fix liability for unpaid subscriptions for stock. *Timberlake* v. *Shippers Compress Co.*, 72 Miss., 323.

CALHOON, J., delivered the opinion of the court.

The appellee, Montgomery, in his bill, charges that Scherck, the appellant, was a subscriber for twelve shares, at the par value of $100 each, in an oil company corporation, and had paid in $800 of the $1,200, and had agreed to pay the other $400. That Montgomery bought, through his agent, J. F.

Miazza, these twelve shares from Scherck at a premium, giving him $1.620 for them, Scherck agreeing to pay in the $400 balance to the company, which he did afterwards pay.     That, evidencing the transaction, Mr. Scherck executed the following instrument:

"Brookhaven, Miss., July 10th, 1902.     Received of J. F. Miazza $1,620 for twelve shares of stock I hold in Brookhaven Progressive Cotton Oil Company (which is fully paid up).     [Signed] R. T. Scherck."

And at the same time executed the following instrument:

"Brookhaven, Miss., July 10th, 1902.     R. F. Young, secretary:     Please issue twelve shares of stock I own in Brookhaven Progressive Cotton Oil Company to J. F. Miazza, having sold same to him.     [Signed] R. T. Scherck."

That R. F. Young was the secretary of the oil company. That Miazza transferred his rights to Montgomery by a written instrument, which is set out in the bill.     That Montgomery applied to the company for the stock, and was refused on the ground that Scherck had telephoned that it be not done. The bill makes Scherck and the company parties, and prays adjudication that Montgomery is the "legal and equitable owner" of this stock, that Scherck is without interest in it, that any pretense of claim to it by him be canceled, and that a mandatory injunction issue to the company requiring it to issue the stock to Montgomery, and for general relief.     To this bill a demurrer is filed, which the court below overruled, and Mr. Scherck appeals.

It is plain that, if Mr. Scherck had never transferred, and if he had, after the payment of his whole stock subscription, demanded his certificates of stock, and been refused, he could have sustained mandamus at law for their issuance.     Granted this, it is equally plain that his immediate, or remote, transferee would have the same right, unless there was some counter-claim in the chain of transfer in the way.     Now his immediate, or remote, transferee, having his right, whether it

be called legal or equitable, knowing that the ground of refusal to issue was based on the telephone message not to issue, had an equitable remedy for mandatory injunction to issue the stock, with the objector as a party, in order that his objection might be heard and adjudicated. The contract between Scherck and Miazza was clearly an executed contract. Specific performance, as between them, is not contemplated by the bill. There is no adequate remedy at law. It is immaterial whether Montgomery could buy other stock on the market. He had the right to that stock which he had bought, if he had any right at all, and that right, or the lack of it, was determinable by evidence. The chancery court was the proper tribunal to apply to in order to dispose of any objection Scherck might make to the issuance of the stock to Montgomery. But for Scherck's telephone message, the company would have cheerfully issued the stock, as the bill avers.

We cannot support the contention that a sale of the stock, as between the parties, cannot be made except by actual transfer on the books of the company. This is for the convenience of the corporation, and it has, in this suit, full opportunity to give any valid reason why it should not make the actual transfer. The design of code, § 844, and the amendment (acts 1894, p. 46), was simply to protect creditors, and fix the stockholders' liability for unpaid subscription. The transfer on the sale is good as between the seller and the purchaser. *Timberlake* v. *Shippers' Compress Co.*, 72 Miss., 323 (16 South., 530).

*Affirmed and remanded, with thirty days to appellant to answer after mandate filed below.*