KING, P.J.,
for the Court:
¶ 1. On August 19, 1996, Dorothy Anne Nardozzi Burns (Dorothy) filed for divorce from James Curtis Burns, Jr. (J.C.). Later, the parties agreed to the entry of a consent decree of divorce on the grounds of irreconcilable differences. In the consent decree, the parties stipulated to certain issues and then set out issues for the chancellor to decide. The parties asked that the chancellor determine the equitable division of real and personal property and other things which are not considered in this appeal.
DISPOSITION AT TRIAL
¶ 2. The chancellor made a virtually even distribution of marital assets. The question of whether J.C. owned 10,000 shares of stock in Meek Auto Sales, Inc. is the main point of contention in this appeal. In J.C.’s brief, he asserts several assignments of error, some of which are interrelated. Below are the issues we will address
I. DOES THE CHANCELLOR’S FINDING OF FACT THAT JAMES CURTIS BURNS, JR. OWNED 10,000 SHARES OF STOCK IN MEEK AUTO SALES CONSTITUTE REVERSIBLE ERROR?
II. DID THE CHANCELLOR COMMIT MANIFEST ERROR IN DIVESTING STOCK OWNERSHIP OF MEEK AUTO SALES, INC. FROM CHARLES SIDNEY MEEK WHEN HE WAS NOT A PARTY TO THE ACTION?
III. DID THE CHANCELLOR COMMIT REVERSIBLE ERROR IN ADMITTING EVIDENCE RELATIVE TO THE VALUE OF THE 10,000 SHARES OF MEEK AUTO SALES, INC. STOCK?
IV. DID THE CHANCELLOR ERR BECAUSE NO EVIDENCE OF THE VALUE OF MEEK AUTO SALES, INC. STOCK WAS PRODUCED IN DISCOVERY?
V. WAS THE CHANCELLOR MANIFESTLY IN ERROR IN THE DISTRIBUTION OF ASSETS?
¶ 3. Finding no reversible error, we affirm the chancellor’s decision in this matter.
*96 FACTS
¶ 4. J.C. and Dorothy were married on March 23, 1969, and lived together as man and wife until the date of their final separation on July 29, 1996, in Panola County, Mississippi. On August 19, 1996, Dorothy filed for divorce and the chancellor heard testimony on February 16 and 17, 1998.
¶ 5. Both J.C. and Dorothy in their testimony revealed that the young couple started them marriage with very few material assets. During the years of their marriage, each helped the other earn a college degree. Both Dorothy and J.C. worked together in the accumulation of marital assets, which the chancellor found to be $1,547,071.86 in total value. Dorothy became employed with the Farmer’s Home Administration, on December 19, 1976, where she continued to work at the time of the parties’ separation and divorce, earning a little over $30,000 per year, benefits, and retirement. J.C. was employed as a bank officer with Security Bank of Bates-ville in 1973, where he continued to be employed as a vice president at the time of the separation and divorce, earning $96,000 per year, benefits, stock, and retirement. J.C. was also involved in a number of corporations and business partnerships with third parties.
¶ 6. As the main point of contention in this appeal is whether the chancellor erred in determining whether J.C. owned 10,000 shares of stock in Meek Auto Sales, the rest of this factual section will deal with the testimony gathered at trial on this matter.
¶ 7. Dorothy testified that J.C. told her in 1981 that he had gone into business with Sid and Jimmy Meek, as a partner in a used car dealership, Meek Auto Sales, Inc., obtaining a one-third interest in the business. He told her he was not drawing any salary from this venture, but rather he would meet with Sid and Jimmy once a year and divide the proceeds to offset car tags and insurance. Through the years the dealership would also do maintenance and replace tires on the family automobiles for no charge. Dorothy testified that the majority of the family automobiles came from Meek Auto Sales. At one point, J.C. mentioned to Dorothy that the dealership had taken out a life insurance policy on him, and that Sid and Jimmy, as beneficiaries, could use the life insurance policy to buy her shares in case of his death.
¶ 8. On cross-examination, Dorothy testified that she did not see an exchange of money from Meek Auto Sales to J.C. That no money was deposited in their joint checking accounts, but that J.C. had a personal account to which she did not have access. She testified that there was a safety deposit box that had cash in it, but she did not know if the money came from Meek Auto Sales.
¶ 9. J.C. Burns testified that he was very good friends with Sid and Jimmy Meek and in 1981 he loaned Sid Meek $10,000. In exchange for the $10,000 loan, Sid Meek gave him a stock certificate as security for the payment of the debt. J.C. acknowledged telling Dorothy that he had an interest in Meek Auto Sales, but testified that he was lying and merely told her that to impress her, or get some recognition from her that he was doing well financially. He stated that he never collected interest on the note since 1981 and that Sid never tried to pay the note back, although the note stated that repayment was to be made no later than April 21, 1982. A copy of the note was made an exhibit during the trial. On the body of the note, which J.C. had filled out, was written, “This note is given for the purchase price or part of the purchase price of 10,000 shares of Meek Auto Sales, Inc. Common Stock.” J.C. produced the original stock certificate at trial, which had the signature of Charles *97 Sid Meek on the back with a blank space to be filled in as to the new owner. J.C. testified that he did not take part in any stockholder’s meetings, financial or business discussions, or any company decisions. J.C. was able to take his automobiles into Meek Auto Sales and have them serviced at no charge and he also was able to drive Meek Auto Sales’s automobiles.
¶ 10. A confidentiality agreement pertaining to Meek Auto Sales, was prepared and submitted to Dorothy’s attorney. When asked why there would be a need for a confidentiality agreement if he had no ownership interest in Meek Auto Sales, J.C. stated that the agreement was needed because he was in the banking business, and simply did not think it would look right to other automobile dealerships if his personal loan to Sid became public information.
¶ 11. Prior to Dorothy’s attorney calling Sid Meek to the stand, an attorney for the Meeks addressed the chancellor. This attorney explained that approximately two months before the trial began Dorothy served subpoena duces tecum to both the Meeks during their deposition asking each to bring any documents that reflected J.C.’s interest in Meek Auto Sales. A protective order was sought to deny such information being released during the trial of this matter. The chancellor found that protection was in order, as the information sought would require disclosure of commercial information; however, the chancellor found nothing which prohibited Dorothy from questioning her witness concerning J.C.’s ownership interest, as well as any information which would tend to show the worth of the company. The chancellor found that the information so disseminated in the proceedings should not be open for public view.
¶ 12. Thereafter, Sid Meek testified that Meek Auto Sales, Inc. has been in business since 1981. He stated that J.C. made a personal loan to him for $10,000 and that he gave J.C. a stock certificate for 10,000 shares of stock in Meek Auto Sales to hold only as collateral for the loan. He stated that the corporation of Meek Auto Sales issued 80,000 shares of Common Stock. James S. Meek owned 10,000 shares of stock or 33.33%. Sid stated that he owned 20,000 shares of stock or 66.67% of the stock. Sid testified that J.C. never received any cash from Meek Auto Sales. Sid produced the 1996 corporate tax return for Meek Auto Sales which showed the value of the company. Sid testified that with the exception of J.C.’s loan, Sid held no other debt at all on the corporation or himself.
¶ 13. The chancellor questioned Sid and asked him what were the terms of the repayment of the loan. Sid testified that he was supposed to pay J.C. back in 1982, but had not. He testified that there was no particular reason he had not repaid the loan and J.C. had not asked for the loan to be repaid. Sid testified that he did not know what sort of interest J.C. would want to collect on the loan.
¶ 14. Relying on the 1996 tax return for Meek Auto Sales, the chancellor ruled that the 10,000 shares of stock were actually owned by J.C. The chancellor ruled that the shares were marital property and subject to equitable division. The chancellor found that the alleged loan between J.C. and Sid Meek was a sham and an attempt to secret the rightful ownership of the 10,000 shares. In support of this, the chancellor looked at the open endorsement of the stock certificate, the privileges, synonymous with ownership, which the company throughout the years provided J.C., and the unexplained non-attempted collection or payment of the debt by either the creditor or debtor, both of whom in the court’s opinion appeared to be astute busi *98 nessmen who were otherwise extremely knowledgeable in aboveboard business transactions.
ANALYSIS
Standard of review
¶ 15. The standard of review of findings of fact made by a chancellor is extremely deferential. This Court always reviews a chancellor’s findings of fact, but they will not be disturbed unless they are manifestly wrong or clearly erroneous. Denson v. George, 642 So.2d 909, 913 (Miss.1994) (citation omitted). A chancellor’s equitable division of marital property is also subject to the traditional scope of review in which we will not disturb the chancellor’s findings “ ‘unless manifestly wrong, clearly erroneous, or an erroneous legal standard was applied.’ ” Draper v. Draper, 627 So.2d 302, 304 (Miss.1993) (quoting Faries v. Faries, 607 So.2d 1204, 1208 (Miss.1992)). “For questions of law, our standard of review is de novo.” Consolidated Pipe & Supply Company, Inc. v. Colter, 735 So.2d 958 (¶ 13) (Miss.1999). It is against this backdrop that J.C. appeals.
I.
Does the chancellor’s finding of fact that James Curtis Burns, Jr. owned 10,000 shares of stock in Meek Auto Supply, Inc. constitute reversible error?
¶ 16. J.C. argues that no transfer of stock took place because valid restrictions on transfer of the stock were not met. Sid indorsed his 10,000 shares of stock, but left the indorsement blank by not mentioning to whom the shares would be transferred. Sid delivered the stock certificate to J.C. in 1981, and J.C. still had possession of the stock certificate at the time of the trial. “An indorsement, whether special or in blank, does not constitute a transfer until delivery of the certificate on which it appears .... ” Miss.Code Ann. § 75-8-304(c) (Supp.1999). The certificate of stock had been transferred from Sid to J.C. We need now decide whether the transfer was invalid due to restrictions. Under Mississippi Code Annotated § 75-8-204(1) (Supp. 1999), Meek Auto Sales is allowed to restrict the transfer of its stock so long as “the restriction is noted conspicuously on the security certificate.” J.C. contends that Meek Auto Sale did place a restriction on the security certificate. J.C. points this Court to the form language contained on the face of the certificate which states, “This certifies that Charles Sidney Meek is the registered holder of Ten Thousand (10,000) shares of capital stock of the above named corporation, fully paid and non-assessable, transferable only on the books of the corporation by the holder thereof in person or by Attorney upon surrender of this Certificate properly endorsed.”
¶ 17. “Corporate shares of stock are universally considered personal property and in the absence of valid restrictions the owner has an inherent right incident to ownership to sell and transfer at his will.” Fayard v. Fayard, 293 So.2d 421, 423 (Miss.1974) (citation omitted). “Restrictions upon the right to transfer were once regarded with disfavor by the courts upon the theory that they impinged upon the right to alienate personal property.” Id. However, this understanding changed and later a majority of the courts sustained the restrictions in close corporations which were “determined to be reasonable in the light of the relevant circumstances.” Id. (citation omitted). “The underlying test for determining reasonableness is whether the restraint is sufficiently needed by the particular enterprise to justify overriding the *99 general policy against restraints on alienation.” Id. (citation omitted).
¶ 18. The Mississippi Supreme Court found certain types of restraints on stock transfers were “reasonable under circumstances persuasive of validity.” Id. Among the type of restraints the Court found reasonable were:
(1) consent restraint, i.e., restrictions requiring the consent of the directors or of other shareholders or a designated percentage of one of these groups for transfer, (2) provisions limiting transfers to a specified class of persons, (3) first option provisions or (4) options empowering a corporation, its officers, directors or other shareholders to purchase the shares of a holder on the happening of a specified event.
Id. at 423-24.
¶ 19. The phrase “transferable only on the books of the Corporation by the holder hereof in person or by Attorney upon surrender of this Certificate properly endorsed,” which was printed on the stock certificate as part of the common format, is not a type of restriction listed above.
¶20. Although predating the Fayard opinion, the Mississippi Supreme Court discussed a restriction which was closely analogous to the restriction on the present stock certificate. See Jackson Opera House Co. v. Cox, 188 Miss. 237, 192 So. 293 (1939); Scherk v. Montgomery, 81 Miss. 426, 33 So. 507 (1903). In both of these cases, the Mississippi Supreme Court determined that “any person entitled to a certificate of stock in a corporation may assign his right, and the assignment is good between the parties, although not evidenced by a transfer on the stock of the company.” Jackson Opera House, 188 Miss. at 250-51, 192 So. at 295 (citing Scherk, 81 Miss. at 429, 33 So. at 508) (emphasis added). “We cannot support the contention that a sale of the stock, as between the parties, cannot be made except by actual transfer on the books of the company. This is for the convenience of the corporation....” Scherk, 81 Miss. at 437, 33 So. at 508.
¶21. The chancellor’s decision that Sid transferred ownership of the 10,000 shares of stock to J.C. is legally and factually correct.
II.
Did the chancellor commit manifest error in divesting stock ownership of Meek Auto Sales, Inc. from Charles Sidney Meek when he was not a party to the action?
¶ 22. In this assignment of error, J.C. argues that under Mississippi Rule of Civil Procedure 19, Sid was a necessary party to this case and should have been joined. The chancellor held that the ownership of the stock shifted to J.C. in 1981. As the chancellor determined that the stock was J.C.’s in 1981, Sid has no interest in J.C.’s stock at the time of the trial.
¶ 23. The first time joinder was ever mentioned is here on appeal. No request was made in the present case. However, the Mississippi Supreme Court has held that parties are allowed to raise the issue of non-joinder for the first time on appeal. Shaw v. Shaw, 603 So.2d 287, 293 (Miss.1992).
¶ 24. In Shaw, Eretta Shaw claimed that her father, Lester Hester, should have been joined to protect his alleged lien on a piece of property. Id. at 293-95. The Mississippi Supreme Court found that “The chancellor did not manifestly err in finding that the subject property was not subject to a lien in favor of Hester.” Id. Because the chancellor was correct in concluding that the subject property was not subject to the lien the chancellor’s “deci *100 sion to proceed in the absence of Lester Hester was also proper.” Id. at 295.
¶ 25. The Court also found it noteworthy that Hester also testified as a witness on behalf of the defense. Id. The Court found that if Hester had “perceived a threat to any interest he may have claimed in the property, he could have intervened pursuant to M.RCP Rule 24(a).” Id.
¶ 26. Based on the foregoing, because the chancellor determined that the stock was owned by J.C. and not Sid, J.C.’s argument that Sid should have been joined must fail. The chancellor did not err in this matter.
III.
Did the chancellor commit reversible error in admitting evidence relative to the value of the 10,000 shares of Meek Auto Sales, Inc. stock?
¶ 27. During the testimony of Sid Meek, Dorothy introduced the Meek Auto Sales 1996 federal tax form. J.C. argues that Dorothy did not present evidence of a foundation for the admission of this document under an exception to the hearsay rule, and the record proof was therefore insufficient.
¶ 28. Our standard of review for the admission of evidence is well-settled. Church of God Pentecostal, Inc. v. Freewill Pentecostal Church of God, Inc., 716 So.2d 200 (¶ 36) (Miss.1998). The admission “of evidence is within the discretion of the trial judge and will not be reversed absent an abuse of that discretion.” Id. (citations omitted). An error in the admission of evidence does not warrant a reversal when there is no prejudice or when the result in the case is the only result warranted by the rest of the evidence in the case. For a case to be reversed on the admission or exclusion of evidence, the ruling must result in prejudice and harm or adversely affect the party’s substantial right. Terrain Enter., Inc. v. Mockbee, 654 So.2d 1122, 1131 (Miss.1995). The party seeking reversal has the burden of establishing prejudice.
¶ 29. The evidence in this case overwhelmingly supported the chancellor’s finding that J.C. owned 10,000 shares of stock in Meek Auto Sales. The chancellor’s factual decision in this matter was not manifestly wrong or clearly erroneous. It is important to note that J.C. on appeal does not argue that the value given to the stock was incorrect. His entire argument is that he was not the owner of 10,000 shares in Meek Auto Sales. J.C. does not offer alternative figures on the value of the stock or how the figure arrived upon by the chancellor was manifestly incorrect. He cannot now say that the chancellor was wrong in how he reached this amount. The result that the chancellor reached in this case, that J.C. owned 10,000 shares of stock in Meek Auto Sales, is not manifestly wrong or clearly erroneous.
IY.
Did the chancellor err because no evidence of the value of the Meek Auto Sales, Inc. stock was produced in discovery?
¶ 30. This assignment of error is based on J.C.’s contention that no evidence regarding the value of Meek Auto Sales had been produced in discovery because Dorothy failed to supply such evidence. Said clearly, it was Dorothy’s duty to produce evidence of how much Meek Auto Sales stock was worth, and her failure to produce any evidence on this matter constituted reversible error. This argument is specious at best.
¶ 31. During a deposition taken of Sid Meek two months before the trial began Dorothy requested information on the val *101 ue of Meek Auto Sales stock, but was denied this information. An attorney for the Meeks argued during the trial of this matter that the information on the value of Meek Auto Sales should be under protective order and this request was granted in so much as the chancellor announced that the information would not be made public. It is quite clear that Dorothy was seeking the information of the value of this stock well before trial.
¶ 32. The Mississippi Supreme “Court has developed strict discovery rules in order to avoid trial by ambush and to insure each party has a reasonable time to prepare for trial.” K-Mart Corp. v. Hardy, 735 So.2d 975 (¶ 31) (Miss.1999). “The very purpose of our civil discovery procedures is to prevent such trial by ambush.” Jones v. Hatchett, 504 So.2d 198, 201 (Miss.1987) (citing Harris v. General Host Corp., 503 So.2d 795, 796 (Miss.1986); Square D. Co. v. Edwards, 419 So.2d 1327, 1329 (Miss.1982)).
¶ 33. The fact that it was Sid Meek who brought the document to trial pursuant to a subpoena issued by Dorothy shows that there was no trial by ambush here. The chancellor did not abuse his discretion in this matter.
y.
Was the chancellor manifestly in error in the distribution of assets?
¶ 34. In his last assignment of error, J.C. argues that the chancellor effectively made a division of the Burns’s marital property giving Dorothy $777,747.86 and giving him less than 30% of that, because he does not own the 10,000 shares of Meek Auto Sales stock, making the distribution woefully short of being equitable. As this Court has already determined that the chancellor was not manifestly wrong or clearly erroneous in his conclusion that J.C. owned this stock, this issue is without merit.
¶ 35. THE JUDGMENT OF THE PA-NOLA COUNTY CHANCERY COURT IS AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
BRIDGES, IRVING, MOORE, PAYNE, AND THOMAS, JJ., CONCUR. McMILLIN, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SOUTHWICK, P.J. AND LEE, J.