DAVID J. ALLEN, RECEIVER v. LEAKE E. EDWARDS.

[47 South. 382.]

**1.** CORPORATIONS. *Stock. Subscription. Estoppel.*

Where a subscriber to the capital stock of a corporation assigned a promissory note to it to secure his unpaid subscription and became a director on the faith of his being a stockholder and accepted a dividend as such, he was estopped, when sued on a separate cause of action by a receiver of the corporation from demanding credit for the sum collected by the corporation on the assigned note, although the corporation held the note only for collection in order to apply the proceeds to his subscription account, and its collection was not made until after the corporation had become insolvent and had an outstanding over issue of stock by which it was disabled to issue him the stock for which he subscribed, and no certificate was ever issued to him.

**2.** SAME. *Code* 1892, § 850.

Code 1892, § 850, providing that a note given by a. subscriber for corporate stock shall not be held as payment therefor, is not available to one seeking to escape liability as a stockholder.

FROM the circuit court of Bolivar county.

HON. SYDNEY SMITH, Judge.

Allen, receiver, appellant, was plaintiff in the court below; Edwards, appellee, was defendant there. . From a judgment in ·defendant's favor the plaintiff appealed to the supreme court. The facts are stated in the opinion of the court.

*Clark & Allen* and *Green & Green,* for appellant.

Edwards had been a director in the wrecked institution and intrusted by the innocent stockholders and creditors with the management, control and supervision of their hard-earned savings, he occupied a position of trust in this *quasi* public service corporation, for the successful operation of which he was under legal obligation to use his best endeavors.

In *Seale v. Baker,* 80 Tex. 289, it was held: "Directors of

banking corporations occupy one of the most important and responsible of all business relations to the general public. By accepting the position and holding themselves out to the public as such, they assumed that they would supervise and give direction to the affairs of the corporation, and impliedly, contracted with those who dealt with it, that its affairs should be conducted with prudence and good faith. They have important duties to perform between its creditors, customers and stockholders, all of whom have the right to expect that these duties will be performed with diligence and fidelity and that the capital of the corporation will thus be protected against the misappropriation and diversion from the legitimate purposes of the corporation. Customers are invited into business relations and are induced to accept and act upon such invitation by the representations that the institution is solvent and owns a certain amount of capital, and that this capital is under the supervision and control of certain directors. It is the duty of the directors to know the condition of the corporation whose affairs they voluntarily assumed to control, and they are presumed to know that which it is their duty to know, and which they have the means of knowing." *Garner v. Mosler,* 58 Neb. 154; *Gibbons v. Anderson,* 80 Fed. 345; 3 Thompson on Corporations, 4009; *Jackson v. Ludeling,* 21 Wall.; *McCourt v. Singers Bigges,* 145 Fed. 107; *Ward v. Davidson,* 89 Mo. 445; 1 Morawetz on Priv. Corp. (2d ed.) Sec. 243, 245; 1 Perry on Trusts (3d ed.) Sec. 429; *Wardell v. Railroad Co.,* 103 U. S. 651, 658, 26 L. Ed. 509; *Delano v. Case,* 121 Ill. 249; 3 Thomp. on Corp. Sec. 4010; *Payson v. Withers,* Fed. Cas. No. 10,864.

It is established here that the corporation, when insolvent, could not prefer a director *Love v. Queen City Mfg. Co.,* 74 Miss. 290, 20 South. 146; *King v. Wooldridge,* 78 Miss. 179, 28 South. 824. Surely the thing being forbidden, the corporation itself being forbidden so to do, the greater includes the less, and a mere director by his individual act, cannot accomplish that which is against the whole policy of the law.

It will doubtless be contended that owing to the fact there was no stock certificate issued, appellee was entitled to the return of the proceeds of the note, and furthermore that owing to the overissue, that the same results follow.

It appears that appellee never made demand that a certificate be issued to him and this is a condition precedent to imposition of liability. As said in 1 Cook on Stock and Stockholders and Corporation Law (3d ed.):

"Sec. 192. *Failure of the Corporation to Tender a Certificates:* It is no defense to an action on a subscription to allege that the corporation has not delivered nor tendered to the defendant the certificate of stock to which he is entitled. The certificate is merely the stockholder's evidence of title to his stock. It is not the stock itself, but only a convenient representative of it. He would be a full stockholder, with all the rights of one, even if the certificate were never issued at all. Consequently, since it is for him to demand the certificate when he wishes it, and not for the corporation to tender it, it is no defense for him to allege that he has never received the paper representation of his stock.

This very section is approved by this court in *Kriger v. Bank,* 72 Miss. 467, 16 South. 351; *Fiser v. Railroad Co.,* 32 Miss. 368; *Manufacturing Co. v. Seaman,* 53 Miss. 661.

"Certificates of stock can always be demanded and obtained by the owners, when they may desire them. They are convenient, as evidence of stock existing upon the proper book, in making sale of stock to third persons, but are not indispensable." *Railroad Co. v. McCormick,* 10 Ind. 501.

When the stock was assigned to appellee in pursuance of the original subscription, that amount was definitely set apart, and there is not a scintilla of evidence that the bank ever sold this amount or attempted to do so, but on the contrary it does appear that the appellee continued in the enjoyment of his shares until the very last without question, and while we may assume that there was an overissue still it appears affirmatively that appel-

lee's stock was not in such overissue, and that when any amount was already assigned and paid for, enjoyed and set apart, the act of the corporation in issuing other stock thereafter could not in the least affect the validity of the stock so set apart. *Shick v. Company*, 15 Ind. App. 388.

There was no doubt that the subscription was valid when made, and the appellee was a stockholder, by the allotment of stock until the overissuance occurred, when by such act appellee was damaged. Now concede that the appellee was entitled to recover this damage, what was the amount thereof? There is no showing in this record, and from appearances the stock has been worthless from its inception almost, and this we submit, would entitle the appellee not to a right to rescind the entire contract, because he was not tendered back the dividend received, *Martin v. Wine Co.*, 99 Cal. 355, and the entire extent of his right would be to sue the bank to recover the value of his stock at the time it was converted by it to its own use by selling it to some one else.

Assuming that appellee deposited the note with appellant, it is to be noted that it was not credited to his account, which apparently had existed for sometime, but that knowingly, as director and trustee, appellee had allowed this note to remain as an asset of the bank during all of the period of prosperity, the bank taking the note payable to itself, asserting over it all acts of ownership whereof it was capable, and appellee was an active party in so doing on behalf of the now defunct bank. Had appellee any valid claim to this note, it is passing strange that he knowingly should have allowed this course of conduct so entirely inconsistent with his alleged right to have continued for years without protest, when he saw the note being renewed, payable to the bank and not to him, and the bank taking the renewal note for the accrued interest as though it were the owner thereof, and this done by him, under his supervision and control as an officer of the institution. And leaving out of view the relationship hereinbefore discussed, appellee is es-

topped to claim the note as his property by his course of con-duct, especially his outward acts, and the reception of the dividend, which alone could accrue to him in virtue of a surrender by him to the bank of said note as part of its capital and assets, under which alone he was entitled to receive the distribution of the profits. *Lee v. Gardiner,* 26 Miss. 521; *Kempe v. Pintard,* 32 Miss. 324; *Willie v. Brooks,* 45 Miss. 542, *Cowen v. Alsop,* 51 Miss 158; *Dickson v. Green,* 24 Miss. 612; *Nixon v. Carco,* 28 Miss. 414.

*Sillers & Owen,* for appellee.

Code 1892, § 850, which was the law at the time provides:

"A note, obligation, or security of any kind given or transferred by any subscriber of stock, in any corporation, shall not be considered, taken, or held as payment of any part of the capital stock of the company."

The bank and the appellee both knowing this to be the law, knew that Edwards could not become a stockholder until this note was paid, and it was left as an escrow to be collected and the stock issued. Under the above statute if the parties ignored it and had the stock issued, Edwards could not have been a stockholder. He was not a stockholder because he never paid anything, and the agreed statement of facts shows that Edwards and the bank never considered the note as a payment for the stock, it being distinctly understood that the stock was not to be issued until the note was paid. In considering similar statutes, we find in 5 Cyc. 437, par. b. the following:

"When the law requires payment in cash or specie, payment must be so made, and giving a note therefor will not constitute the payor a stockholder."

In the case of *Hayne v. Beauchamp,* 5 Smed. & M. 515, this court held: that where the charter of a bank requires subscription to the capital stock to be paid in at least ten per cent cash, or specie, it was necessary to make the payment in cash in order to constitute the subscriber a stockholder, and a note given

for subscription would not constitute the subscriber a stock-
holder, and the subscription would be void.   Under this it
would seem that no matter what the understanding was be-
tween Edwards and the bank, he did not become a stockholder
because the law prohibited him from becoming a stockholder in
any way, except by payment of cash for the stock to which he
subscribed.   The law is a very wholesome one and its purpose
is manifest.   If banks were permitted to issue all of their
stock to subscribers, who only gave their notes, it would bring
about a state of affairs that this statute was enacted to prevent.
The court will not hold a party to be a stockholder for any pur-
pose unless he has complied with the law in subscribing for
his stock.   If he should be held to be a stockholder in this case
for the purpose of preventing him from demanding his money
from the proceeds of this note, then he would be a stockholder
for all purposes, and it would be contrary to the statute and
also against public policy to permit him to become a stock-
holder under the statement of facts for any purpose whatever.
It is not shown in this record that Edwards or the bank either
considered him a stockholder by virtue of this transaction.
The stock book does not show that stock was ever issued to him,
showing that it was not the intention of the bank to consider
him a stockholder until this note was paid.   It is sought by
the appellant to show that because Edwards acted as a director
at the time the bank made assignment, this estops him from
denying that he was a stockholder.   This is not sound for the
reason that Edwards had a right to be a director, because he
was the owner of two shares that had been assigned to him by
Todd.   He is not estopped from denying that he was a stock-
holder, by virtue of this note being held as an escrow, because
the agreement and the whole record show that he was not by
virtue of that transaction a stockholder, and could not be con-
sidered one.

The law provides that he should not be a stockholder under
any such transaction as it is sought by appellant to make him a

stockholder, and this law could not be set aside by the agreement of the parties, if they had made any such agreement, nor by the doctrine of estoppel. It is sought also by the appellant to show that Edwards was a stockholder, by reason of the fact that $64 was paid to him as a dividend on eight shares of stock. It is shown that this was wrongfully paid and was afterwards recovered by appellant in the chancery court which seemed to take the view that Edwards was not a stockholder.

If the bank had considered Edwards a stockholder, and we do not think that there is anything in the evidence to show that it did, Edwards would still have a right to rescind his contract for the stock, because, at the time of the payment of the note he could not have become a stockholder, because there had been an overissue of stock. 10 Cyc. 373, p. 3.

WHITFIELD, C. J., delivered the opinion of the court.

The plaintiff introduced a note, signed by L. E. Edwards, dated December 16, 1905, for $2,187.59, due December 28, 1906, bearing interest at 10 per centum after maturity, payable to the Bolivar County Bank, or bearer. There was a suit by Allen, receiver of the Bolivar County Bank, against L. E. Edwards on this note; the bank having failed. The defendant, L. E. Edwards, by his plea admitted execution of the note, but claimed that at the maturity of the said note the bank was indebted to him in certain sums, to-wit: Cash on deposit at the time of assignment which the bank had made, $1,526.27, and the amount of the proceeds of a note collected from J. S. Edwards for $750; in all, $2,276.27. The defendant therefore claimed that the bank would owe him on settlement $88.77. The bank failed on February 8, 1906, and made an assignment. The plaintiff in his replication admitted an indebtedness on the part of the bank to L. E. Edwards at the time of the failure in the sum of $1,065.34, and stated that he stood ready to allow that sum as a credit on the note of the defendant sued on. In his replication he denied that the Bolivar County Bank was in-

debted to the defendant in the sum of $750, the proceeds of the
note of J. S. Edwards which had been collected by the receiver,
and also denied that L. E. Edwards had on deposit in the bank
at the date of its failure any more than $1,065.34 aforesaid,
and denied that defendant was entitled to any counterclaim, or
set-off other than that sum.

The question for decision in this case is whether, under the
agreed state of facts, this set-off can be allowed. The parties
then entered into the following agreed statement of facts: "It
is agreed by and between the counsel for plaintiff and defendant
that the plaintiff, D. J. Allen, Jr., was at the time of the insti-
tution of this suit the duly appointed and qualified receiver of
the Bolivar County Bank, and was then and still is acting as
such. It is agreed that at the time of the failure of the Bolivar
County Bank on February 8, 1906, L. E. Edwards had on de-
posit in said bank, to the credit of his account as clerk, the
sum of $295.50, and a further credit to his account individually
of $1,234.52; that at the time of the failure of said bank the
firm of Edwards & Williams, of which firm L. E. Edwards was
a member, was indebted to the Bolivar County Bank in the
sum of $232.28, which amount has since the failure of the bank
been charged to the account of L. E. Edwards; and, further,
that at the time of the failure of said bank E. G. Galloway was
indebted to said bank at the time of its failure in the sum of
$170.40, which amount the said L. E. Edwards for valuable
consideration assumed, and by his direction the said amount
was charged to the account of L. E. Edwards by the receiver.
It is agreed for the defendant that some time in the early part
of 1905 L. E. Edwards agreed to take some stock in the Bolivar
County Bank, and gave to it a note of J. S. Edwards, payable
to L. E. Edwards, to collect and issue to him the stock for the
amount of the note; that the said note became due in the fall
of 1905, and J. S. Edwards gave a renewal note, payable to the
Bolivar County Bank, to pay off and discharge this note; that
the renewal note of J. S. Edwards for $750 was collected by

D. J. Allen, Jr., receiver of said bank.  It is further agreed
that the stockbook of the Bolivar County Bank shows an over-
issue of stock, and shows no stock issued to L. E. Edwards;
but at the time the said Edwards agreed to take the six shares
of stock in said bank the stock had not been fully issued.  It is
further agreed that no stock was ever issued or delivered to
L. E. Edwards.  It is further agreed that on the 20th day of
January, 1906, the Bolivar County Bank paid to L. E. Ed-
wards the sum of $64, being a dividend of 8 per centum on
eight shares of the capital stock of said Bolivar County Bank,
which sum was accepted by the said L. E. Edwards and that on
the 4th day of April, 1906, the receiver of the Bolivar County
Bank filed a bill in the chancery court of Bolivar county to re-
cover the said dividend, and at the June term, 1906, of said
court, a personal decree was rendered against the said L. E. Ed-
wards for the sum of $64.  It is further agreed that the deed
of assignment made by the Bolivar County Bank on the 7th day
of February, 1906, to B. W. Griffith, assignee, recites that at
a special meeting of the board of directors of the Bolivar county
Bank, held on the 7th day of February, 1906, there were pres-
ent R. H. Williams, C. R. Smith, S. T. Rucks, L. E. Edwards,
E. J. Knott, and H. M. Ward, directors of said bank.  It is
agreed that prior to the failure of the bank, February 8, 1906,
L. E. Edwards had purchased and had transferred to him two
shares of stock from H. D. Todd, for which the said Todd had
fully paid, and which was regularly issued to the said Todd.
It is agreed that the note of J. S. Edwards was renewed for
$665, and when it was renewed the accumulated interest made
the amount $750, and in consideration of the transfer of said
renewal note for $665 the Bolivar County Bank was to issue to
said L. E. Edwards six shares of its caiptal stock."

It will be observed that on the 20th day of January, 1906,
prior to the failure of the bank, the bank paid L. E. Edwards
$64, being a dividend of 8 per centum on eight shares of the
capital stock of the bank, which sum was accepted by the said

Edwards. The eight shares were made up of two shares issued to H. D. Todd, and sold by him to L. E. Edwards, and the six shares subscribed for, or attempted to be subscribed for, by L. E. Edwards. In view of this fact, the contention on the part of defendant that he was a director alone in virtue of the two shares received, purchased from Todd, falls to the ground. Undoubtedly the bank treated him as a stockholder on the entire eight shares. Undoubtedly he, in dealing with the bank, so regarded himself, else his reception of the dividend of $64 cannot possibly be explained consistently with good faith and fair dealing towards the creditors and depositors.

It is earnestly insisted by learned counsel for defendant that the bank held the note of J. S. Edwards as an escrow merely, under the duty of collecting it for L. E. Edwards, and, when collected, of applying it to the payment of his subscription for the six shares of stock; and, further, that since it was not collected until after the bank failed, and since at that time there had been an overissue of stock, the bank could not issue any stock to L. E. Edwards, and should have credited the proceeds of this note thus collected to him individually. It is impossible to sustain this contention on the facts in this case; one of the important facts being that at the time Edwards agreed to take the six shares of stock the stock had not then been fully issued. It is also not denied that L. E. Edwards was a director of the bank, and acted as such in the execution of the assignment. It is also very significant that L. E. Edwards allowed the note of J. S. Edwards to be renewed, payable, not to himself, but to the bank; he being a director of the bank at the time. It is not for L. E. Edwards, director and stockholder, to go on acting as if he were a stockholder as to the whole eight shares, and as if he were a director based on the holding of the entire eight shares, and receiving $64 dividend based on the acknowledgment of the bank, and himself acting on the premise, both by himself and the bank, that he was a stockholder of the whole eight shares, throughout the period of the prosperity of the

bank, and then, when the crash comes, to attempt to evade the obligation which the law has imposed upon him to the depositors and creditors of this failed bank. It would operate the grossest fraud upon the creditors of the institution, as well as on the depositors, to allow any such contention to prevail. He is clearly estopped from making any such defense on the facts of this case.

The chief reliance of learned counsel for appellee is section 850, Ann. Code of 1892, which is as follows: "A note, obligation or security of any kind given or transferred by any subscriber for stock in any corporation shall not be considered, taken, or held as payment of any part of the capital stock of the company." That section has no application in the solution of this case. It simply provides that there can be no valid subscription to stock without the payment in cash therefor. The rule declared by that section was intended to secure the corporation and its creditors and depositors, and not to benefit a defaulting subscriber.

Section 844 of the Annotated Code of 1892, is in the following words: "In all corporations each stockholder shall be individually liable for the debts of the corporation contracted during his ownership of stock, for the amount of balance that may remain due or unpaid for the stock subscribed for by him, and may be sued for by any creditor of the corporation; and such liability shall continue for one year after the sale or transfer of the stock. The stock in all corporations shall be transferable by the indorsement and delivery of the stock certificates and the registry of such transfer in the books of the corporation; but the legal title to the stock and the beneficial interest therein shall remain in the person appearing to be the owner by the books of the corporation, as to creditors, until after a *bona fide* transfer has been made on the books."

Section 843 of the Annotated Code of 1892 is in the following words: "Every corporation may sue any subscriber for stock therein for calls or installments that may remain due, or

his stock may be sold for such calls or installments in the manner prescribed in the by-laws; and if a mode be not prescribed therein for the sale of stock, then the same may be sold, by resolution of the board of directors, by any person who may be authorized by such resolution, to the highest bidder, on three weeks' notice, published in some convenient newspaper; but the subscriber whose stock may be sold shall nevertheless be liable for any deficiency of the sale under the amount due on the stock. The amount received shall be placed to the credit of the stock sold and inure to the benefit of the purchaser, who, by such purchase, shall become a stockholder in the place of the original subscriber."

The stock subscription of the bank was the means of the company, on the faith of which credit was given to it, and every subscriber was liable for debts contracted during his ownership of stock, and for a year after he had transferred it, to the amount of his subscription not paid according to its terms. See *Scherck v. Montgomery,* 81 Miss. 437, 33 South. 507, and *Vick v. La Rochelle,* 57 Miss. 605. The purpose of these statutes and of section 850 is perfectly plain. They were all enacted for the purpose of protecting the depositors and creditors of a bank. They were not passed with any view to benefit a defaulting stockholder. They had no aspect that way, but looked wholly to the security of depositors and protection of creditors. It is utterly immaterial whether L. E. Edwards was in law a valid subscriber to the stock or not. He held himself out by all his conduct and dealings with the bank as being a stockholder and a director—as a stockholder of these six shares. He undoubtedly acted as director on the strength of these shares, as well as the other two, and there is nothing in the agreed statement of facts which warrants the theory of the learned counsel of the appellee, that J. S. Edwards' note was delivered as an escrow. Having so held himself out towards depositors and creditors as a stockholder of these six shares, the law will take him at his word and deal with him as if he were

in fact a stockholder, whether he was or not. In other words, he is estopped to deny as against creditors that he was a stockholder as to these six shares by his own course of dealing in the matter.

The very authority so much relied upon by the learned counsel for the appellee (*Hayne v. Beauchamp,* 5 Smed. & M. 518) would clearly hold him liable on the note. It is true that Judge SHARKEY, speaking for majority of the court in that case, held that the subscription was a void act, "vesting no rights in the subscriber, and imposing no obligation on the corporation;" but it is also true that the court held the party liable on his note given for the stock, and held him a stockholder (because, it is said, by his consent the proceeds of his note were applied in payment for stock) to the amount of that payment, "not in virtue of his original subscription, but by the subsequent purchase," and a majority of the court consequently held him to be liable on his note. But it is to be noted that Judge CLAYTON, in his specially concurring opinion, rested his concurrence upon the ground that the subscriber could not plead that he was not a stockholder as against creditors under circumstances like those in that case and in this case. We think Judge CLAYTON was entirely correct in saying that the "judgment creditor of a corporation has rights beyond those of a corporation itself." He says, also, in the close of his opinion: "Both parties treated the subscription as valid. The payment, though not made at the time, was afterwards made, and, if this did not constitute him a stockholder at the time of the subscription, it did at the time of the payment." And he further held "that the opposite holding would enable the defendant to avail himself of his own wrong, and to violate the elementary principles of law and justice."

We do not find it necessary in this case, on its particular facts, to say whether this subscription was absolutely void. We do not think it was void in the sense that creditors cannot hold the defaulting subscriber on a note given for the stock. But

it is enough here that this man acted throughout as a stockholder of the eight shares, received dividends on the whole eight shares, and never intimated anything to the contrary until the calamity overtook the bank. He cannot, under these circumstances, be permitted to set up the invalidity of his stock subscription, or the invalidity of a note given therefor. We need go no further than hold him estopped on the facts of this particular case. It is sufficient that the armor of Achilles leave his heel uncovered.

The judgment is *reversed,* and the case *remanded.*