## JOY v. GODCHAUX.

Circuit Court of Appeals, Eighth Circuit.
October 7, 1929.

No. 8466.

Charles M. Blackmar and Meservey, Michaels, Blackmar, Newkirk & Eager, all of Kansas City, Mo., for appellant.

Fred J. Wolfson, of Kansas City, Mo. (Swearingen, Wolfson & Lebrecht, of Kansas City, Mo., on the brief), for appellee.

Before KENYON and VAN VALKEN-BURGH, Circuit Judges, and MARTINEAU, District Judge.

KENYON, Circuit Judge. Appellant is the receiver of the Tel-Tex Company, a Texas corporation. The controversy here involves two notes, one for $4,000 and one for $6,000, given by appellee to the Tel-Tex Company in payment for shares of stock in said company. The notes were made in Texas and payable there. Appellee's contention is that the notes are void under the Constitution and laws of Texas, and further that they were given without consideration. A written stipulation was entered of record in the trial court waiving a jury, and the case was tried to the court, which held that the Tel-Tex Company could not have recovered on the notes, and that the receiver had no greater claim against appellee than the company would have had. The facts are these:

Appellee was the president, director, and chief stockholder of the Tel-Tex Company. It originally had a paid-up capital of $125,-000. On July 31, 1919, the stockholders, acting upon a report made to them by appellee, voted to increase the capital stock to $500,-000. At this meeting there were present 787 shares of stock out of a total of 1,250, of which appellee held 537. The minutes thereof were signed by appellee as president of

650

the company, and attested by his brother as secretary. The laws of Texas required the filing with the secretary of state of a certificate showing that the full amount of any increase of stock of a corporation had been in good faith subscribed, and that more than 50 per cent. thereof had been paid up in cash. Such certificate was signed and sworn to by members of the board of directors of the Tel-Tex Company, including appellee, and duly filed with the proper officer. The receiver also was one of the parties signing the certificate. It recited that the increase of the capital stock was $375,000, and that 50 per cent. of the sum, or $187,500 had been paid up in cash. The amount of cash paid was in fact $75,000, and a promissory note was drawn for the balance, signed by the directors of the bank. Appellee and the other directors contributed none of the $75,000 paid. The statement filed was false, and both parties to this controversy so admit. The note was reduced to $54,000 by crediting thereon at various times the proceeds of sales of capital stock. The directors prorated among themselves this balance, and gave their notes therefor, which notes include the notes in controversy here. Two directors, Raley and Morrow, were released of liability, their share being absorbed by others; of whom appellee was one. At the time the notes were signed, stock certificates were issued to the respective parties, and were deposited as collateral security therefor. The stock certificates used as security for the notes were signed by appellee as president. They were indorsed by the persons to whom the stock was issued and the notes and certificates were placed among the assets of the corporation. Whether or not these notes were entered upon the books of the company is a matter of dispute under the record. When the appellant was appointed receiver of the Tel-Tex Company by the district court of Dallas county, Tex., these notes came into his possession as assets of the company, and he brought this suit thereon. The notes signed by the other directors, as far as collectible, have been paid. While the court decided in favor of appellee, upon plaintiff's request it made the following findings of fact:

"(1) The Court finds that there are insufficient assets in the hands of M. A. Joy, as Receiver for the Tel-Tex Company to pay the creditors of said company and unless the notes sued on in this case are paid that the creditors of the Tel-Tex Company will not receive payment of their claims in full.

"(2) The Court finds that each of the notes sued on were signed by the defendant, Herbert Godchaux.

"(3) The Court finds that certificate number 429, for sixty shares of the capital stock of Tel-Tex Company of the par value of one hundred dollars each, was issued to the defendant, Herbert Godchaux, and deposited with the Tel-Tex Company as collateral security to the note of Herbert Godchaux, dated February 3rd, 1921 for $6,000.

"(4) The Court finds that certificate number 433 for forty shares of the capital stock of Tel-Tex Company, of the par value of one hundred dollars each was issued and delivered to O. A. Palmer, L. Godchaux and Herbert Godchaux and deposited with the Tel-Tex Company as collateral security for the note, dated February 3rd, 1921 for four thousand dollars signed by the aforesaid persons.

"(5) The Court finds that none of the notes sued on in plaintiff's petition have been paid."

Section 6, art. 12, of the Constitution of the State of Texas, provides: "No corporation shall issue stock or bonds except for money paid, labor done or property actually received, and all fictitious increase of stock or indebtedness shall be void."

Article 1308, c. 2, tit. 32, Revised Statutes of Texas 1925, in part is as follows: "Before the charter of a private corporation created for profit can be filed by the Secretary of State, the full amount of its authorized capital stock must be in good faith subscribed by its stockholders and fifty per cent. thereof paid in cash, or its equivalent in other property or labor done, the product of which shall be worth to the company the actual value at which it was taken or at which the property was received."

Article 1330, c. 3, tit. 32, Revised Statutes of Texas 1925, is as follows: "The board of directors, trustees or managers of a corporation may increase its authorized capital when empowered to do so by a two-thirds vote of all its stock, by complying with the provisions of Article 1348. Upon such increase of stock being made in accordance with such provisions and certified to the Secretary of State by the directors, and, if the Secretary of State is satisfied that the increase has been made in accordance with law and that the requirements of law have been complied with as to the subscription and payment of stock and in other respects, as on an original application for charter, he shall file such certificate of increase; and thereupon the same shall become a part of the capital stock of such corporation. Such certificate shall be filed and recorded in the same manner as the charter. [Id.; Acts 1893, p. 123; G. L. Vol. 10, p. 553.]"

Article 1353, c. 3, tit. 32, Revised Statutes Texas 1925, is as follows: "No corporation shall issue any stock whatever, except for money paid, labor done which is reasonably worth at least the sum at which it was taken by the corporation, or property actually received reasonably worth at least the sum at which it was taken by the company. Any corporation which violates any provision of this article shall, on proof thereof in any court of competent jurisdiction, forfeit its charter, permit or license, as the case may be, and all rights and franchises which it holds under, from, or by virtue of the laws of this state. [Acts 1907, p. 309.]"

It is the contention of counsel for appellee that the whole transaction as to the issuance of the additional stock and the taking of the notes therefor was a subterfuge to circumvent provisions of the Constitution and laws of Texas, hereinbefore set out; that it was carried out by the directors of the company, and that none of the officers or directors ever intended to pay these notes; that they were to be credited down until completely wiped out by receipts of money from the sale of stock; that there never was any understanding that the notes should be paid except in that way; that appellee did not receive the stock certificates, but that the directors simply signed the same and placed them in a portfolio pending their sale to the public; that, even if they had received the stock certificates, the company had no right to issue the same, and no interest in the corporation passed with them; that to permit recovery would work a hardship upon one of the parties at fault in favor of the other party at fault.

Undoubtedly the transaction was contrary to the laws of Texas. If the controversy was between the corporation and appellee, it is probable a court would drop the matter, but the affairs of the corporation are in the hands of a receiver who represents, not only the stockholders, but the creditors, and the rights of creditors have now intervened and have an important bearing on the case.

The trial court found as a fact that there were insufficient assets in the hands of the receiver to pay the creditors of the company, and that, unless these notes are paid, the creditors will not receive payment of their claims in full.

Estoppel was not pleaded in reply to the answer, yet in the presentation of the case to the trial court counsel for the receiver stated, in substance, that it was the position of plaintiff in the case that a director of the company executing such notes as these was estopped to deny their validity. That question therefore arose early in the case, and was accentuated by the following request of plaintiff for a conclusion of law: "The Court declares the law to be that inasmuch as the defendant, Herbert Godchaux, who was the president, director and a principal officer of the Tel-Tex Company, participated in the stockholders' meeting at which the increase of the capital stock of the Tel-Tex Company was authorized and subsequently signed and swore to a statement filed with the State Department of the State of Texas, showing said increase of capital stock was paid up in cash, that the said defendant is estopped from asserting a plea of no consideration on the notes sued on in counts two and three of the plaintiff's petition."

■ Estoppel in pais is the principal question argued in this court in appellant's brief. We find little reference thereto in the brief of appellee. Counsel for appellee in his statement to the trial court at the commencement of the trial, referring to the statement of counsel for appellant, said, "We have no quarrel whatever with his theory that where a man is a party to a transaction of that kind, that he cannot come into equity with clean hands, so to speak, or he cannot take advantage as against the creditors of a concern of his own misdeeds, but that is not a rule of law and it is a rule of equity." We do not so understand the law. It is well settled that an equitable estoppel is available in a law action. This court said, in Anglo-American Land, M. & A. Co. v. Lombard, 132 F. 721, 733: "Estoppels by matter in pais, as distinguished from estoppels by record or deed, are sometimes called equitable estoppels, because they originated in courts of equity. But it is not meant by this that they are not available in courts of law, or are cognizable only in courts of equity. Such estoppels were early recognized in courts of law, and came to be so readily and freely sustained as matter of defense at law that it is neither necessary nor permissible to resort to equity for the mere purpose of obtaining the benefit of such an estoppel, when there is not otherwise a ground of equitable jurisdiction." See, also, California Prune & Apricot Growers, Inc., v. El Reno Wholesale Grocery Co. (C. C. A.) 15 F.(2d) 839. 10 Ruling Case Law, p. 841, § 147, gives the rule as follows: "At common law estoppel is founded on deeds and judicial records, but in equity estoppel arises from matters in pais. At common law matter in pais was mere evidence. It is now, however, generally held that an equitable estoppel or

estoppel in pais may be enforced in a court of law as well as in equity, though in some jurisdictions, and generally in states where the legal and equitable remedies are not blended, it is still the rule that title to land cannot be affected in a court of law by the assertion of an equitable estoppel, and that in such cases resort must be had to a court of equity." 21 Corpus Juris, § 121, p. 1118 states it thus: "As a general rule an estoppel in pais may be set up in actions at law as well as in suits in equity." It would have been better practice of course to have pleaded specifically the alleged estoppel, but we think it is not beyond our province to consider the question where, from the facts pleaded and shown, it appears as a matter of law that there is an estoppel. In Shelton v. Southern Ry. Co., 255 F. 182, 185 (District Court), Judge Sanford, now a Supreme Court Justice, says: "Generally speaking an estoppel in pais need not be pleaded, * * * estoppel being, in effect, a rule of evidence." District Judge Philips held in Carter v. Rinker (C. C.) 174 F. 882, 886, that estoppel need not be pleaded; that it arose "as a conclusion of law from the facts pleaded, rather than from the mere designation of the act as an estoppel." In our judgment the question of equitable estoppel was in this case from the beginning of the trial, and should be considered in reaching a proper determination thereof.

If the notes in question were absolutely void under section 6, art. 12, of the Constitution of Texas, or under its statutes, then the doctrine of estoppel would not apply, as estoppel cannot make valid that which the Constitution and laws of a state make absolutely invalid, and, in considering whether the notes are void under the Constitution of Texas, we are governed of course as to the construction of that Constitution by the holdings of the highest tribunal of that state. Ramsay v. Crevlin (C. C. A.) 254 F. 813. We refer therefore to the leading case on this subject of Washer v. Smyer, 109 Tex. 398, 211 S. W. 985, 987, 4 A. L. R. 1320, and from the opinion we quote:

"There is no declaration in the constitutional provision that a transaction in which something other than money, property, or labor is received in payment for the corporation's stock, shall be utterly void. It prohibits such a transaction and therefore makes it unlawful, but that is the extent to which it goes. If a security be accepted in payment for the stock, such, for instance, as a subscriber's note, which is not property for such a purpose, the Constitution does not say ei-

ther that it, or the stock issued for it, shall be void. The acceptance of the note in payment for the stock and the issuance of the stock are only interdicted. The word 'void' is used but once in the constitutional provision, and that, it is to be noted, is not in the clause which prohibits the issuance of stock for other than money, property or labor. It is in the distinct clause which says that all fictitious increase of stock or indebtedness shall be void. While the term is found in that clause of the section, the framers of the Constitution avoided its use in the other. It must be assumed that they did so deliberately.

"There is an essential difference between prohibiting a certain form of transaction—making it unlawful, and declaring that it, with all securities, issuing out of it, shall be utterly void. It is a distinction familiar in the law. * * *

"The constitutional provision was not intended as a shield for the stockholder who has not paid for his stock. It was not framed for his benefit. It was aimed against his acquiring stock except upon lawful payment. It was designed for the protection of the corporation and its creditors. It emphasizes the stockholder's obligation to make full and lawful payment in accord with its mandate, rather than furnishes him a defense when he has failed in that obligation. Its purpose is to give integrity to the corporation's capital. It is to prevent false pretense at its hands, and avoid imposition upon the public. None of these objects would be promoted by declaring a note given by a subscriber for stock uncollectible in the hands of a bona fide holder. * * *

"In such a case is the stockholder who has paid nothing for his stock, who has deceived the public, and worked an injustice to other stockholders, to be permitted to take shelter under the Constitution? Is he to be allowed to interpose it to defeat his just obligation? We decline to so hold. It could not have been intended by the framers of the constitutional provision that it should make possible the perpetration of such a fraud by permitting such a defense to be founded upon it. The law should answer in such a case that the stockholder's concern for the sanctity of the Constitution is a trifle belated."

The doctrine of this case has not been changed by any subsequent decision. See, also, Thompson et al. v. First State Bank of Amarillo, 109 Tex. 419, 211 S. W. 977, where it is held that neither the stock issued nor the notes given therefor is void under the constitutional inhibition. It is apparent, there-

fore, that the constitutional provision does not make the notes utterly void. This is in line with other decisions. We refer to a few.

In Wilson v. Spencer (C. C. A.) 261 F. 357, the court was passing on the validity of a note for stock made and delivered in Texas, and discussed the article of the Constitution we have been considering. It referred to the various conflicting decisions of the Courts of Civil Appeals of Texas on the question. The trial court had entered a decree for defendant, evidently holding that the note was not enforceable even in the hands of a bona fide holder. On the authority of Washer v. Smyer, supra, the decree was reversed. This court discussed a question arising under the Iowa statutes, which provided that a corporation should not issue its stock until it had received the par value thereof, and that stock issued in violation of such provision should be void. This court held that stock issued for a note was not wholly void, but voidable.

In Pacific Trust Co. v. Dorsey, 72 Cal. 55, 12 P. 49, it was held that a note given to a bank in payment of the first assessment, the certificate of stock being issued thereon, was not void under a similar constitutional provision of California.

The Constitution of Colorado, § 9, art. 15, has a provision similar to that of Texas. It was held in Boldt v. Motors Securities Co., 74 Colo. 55, 218 P. 743, that this section was not available as a defense in an action brought on a note given for the stock of the corporation. In this case the court refers to the decisions of the states having such statutes as not being harmonious, and says that Texas, Delaware, and Alabama construe the constitutional provision as making absolutely void the issuance of stock in exchange for unsecured promissory notes, and cites a large number of cases holding otherwise with which it agrees. The court, we are satisfied, was in error with reference to Texas, for the Texas Supreme Court does not hold the issuance of notes for the stock to be absolutely void, as we have heretofore pointed out.

If the notes in controversy here were in the hands of bona fide holders for value, there could be no question as to the applicability of the doctrine of equitable estoppel under the circumstances of this case, and a defense based on the theory that defendant had participated in an unlawful act and therefore should be relieved of responsibility would be bold and unconscionable.

How does the situation materially differ here where the rights of innocent creditors are involved?

The courts of Texas hold that, where an action is brought by a receiver under such circumstances as here presented, defendant is estopped to make the defense that the notes are null. The most important Texas case on this subject is Thompson et al. v. First State Bank of Amarillo, 189 S. W. 116, 119 (Civ. App.) and in the Supreme Court in 109 Tex. 419, 211 S. W. 977. The Court of Civil Appeals held that a note given in payment for capital stock of a bank in contravention of the Constitution, § 6, art. 12, was void as between the parties; that the capital stock of a corporation, especially unpaid subscriptions, was in Texas a trust fund for the benefit of general creditors; that a subscriber to the capital stock of a banking corporation payable by note, in contravention of the Constitution, which note has been negotiated so as to give the corporation a credit after its insolvency, was estopped to assert the invalidity of the note. The court pointed out that the stock books of a corporation ordinarily would show such a subscriber as a full-fledged stockholder, and said: "To then permit him to say that he was not a stockholder, when the insolvency of the bank creates the rights of creditors as one of paramount consideration, to this court is unconscionable. The receiver represents the creditors as well as the corporation." In the decision of this case in the Supreme Court of Texas the court dealt in a very complete decision with a similar question to the one involved here, and held that, under section 6, art. 12, of the Constitution, prohibiting the issuance of corporate stock, except for property actually received, the giving of a note for stock was not a valid payment, but nevertheless neither the stock issued nor the note given was absolutely void, and that, while persons dealing with a corporation were chargeable with knowledge of its powers, they were not bound to take notice of the manner in which it had attempted to exercise them. The court squarely held that a subscriber to bank stock who had given his note therefor in violation of said article of the Constitution was estopped to assert the invalidity of the transaction in a suit to enforce the note for the benefit of creditors. The court points out that creditors dealing with a corporation have the right to assume that its capital has been paid in accordance with the law; that it stands as a pledge for the security of the corporation's debts, and upon insolvency becomes a trust fund for the protection of creditors, saying, "With the debts of the corporation unpaid, it is a fraud upon innocent creditors, as well as a fraud upon the law, to release him from that duty."

There, as here, the effect of the transaction was the acquisition of stock without making lawful payment for it. There is no question that the mere promise to pay, evidenced by a note, was not "property actually received," within the meaning of the Constitution.

In Davis v. Allison, 109 Tex. 440, 211 S. W. 980, the court pointed out that in Thompson v. Bank of Amarillo, supra, the corporation possessed the power to issue stock, although there was an illegal exercise thereof, that the transaction was voidable and not void, and that innocent creditors were not chargeable with knowledge of the manner of the exercise of the power and were entitled to invoke estoppel against the subscriber who in a receiver's suit was seeking to defeat his note given for the subscription. It held there was no estoppel because the corporation itself was prohibited by the Constitution. Here the power existed in the Tel-Tex Company to increase its capital stock, but, instead of exercising that power in a legal manner, its directors chose to act illegally.

Davis v. Mitchell (Tex. Civ. App.) 225 S. W. 1117, was a suit by a receiver upon a note for a stock subscription. Plaintiff claimed that defendant had participated in the transaction, had accepted the stock, had recognized the validity of the corporation by numerous acts, and that he was estopped to assert the defense of the invalidity of the subscription contract. The court said that this question had been conclusively settled in the case of Mitchell v. Porter (Tex. Com. App.) 223 S. W. 197, and approved the doctrine that, as the stockholder had participated in the illegal act, he was estopped from asserting invalidity of the transaction as a defense to the note given for capital stock in the corporation.

Stuart v. Mitchell, 241 S. W. 713, 714 (Tex. Civ. App.), was a case where the vice president of the insurance company had given to the company his notes in payment for the balance due on stock for which he had subscribed. It was held that after the appointment of a receiver he was estopped to deny that the notes were legal obligations. There was evidence that he had permitted the company to hold out the notes to other stockholders and creditors as valid obligations, and the court said under these facts "the want of a consideration could not, because of estoppel, be alleged and asserted as a defense."

In McWhirter v. First State Bank of Amarillo, 182 S. W. 682 (Tex. Civ. App.), the court held that McWhirter was estopped to deny that he was a stockholder in the bank even though his subscription for stock was on credit with an agreement that it should be paid from dividends and hence in violation of section 6, art. 12, of the Constitution; that the same constituted no defense after the bank had defaulted and was in the hands of special agents appointed by the Commissioner of Banking to wind up its affairs, the action being brought for the benefit of creditors. This case was referred to with approval in Thompson v. Bank of Amarillo, supra.

In Lockney State Bank v. Martin, 191 S. W. 796, 798 (Tex. Civ. App.), the court discusses this provision of the Constitution, and holds that a note between the original parties for stock would be void; that it is enforceable in the hands of a holder before maturity for value, without notice, and in the due course of trade. It points out that the note could be adjudged by the courts void, because the consideration was illegal, and that the corporation may suffer a forfeiture of its charter for issuing stock paid for by notes, and said: "Certain conditions may arise which would estop the corporation or stockholder from defeating the obligation. The law which is intended to protect innocent third parties ought not to be construed so as to defraud others who do not know of such fraud or illegal acts. The doctrine of estoppel has been applied by this court to notes of this character in the interest of the creditors of a corporation upon it becoming insolvent." And it was held that the party giving the note for the stock should be estopped from claiming that he executed it in violation of the law.

In Mitchell v. Porter, 223 S. W. 197, 200 (Tex. Com. App.), it was held that a subscriber to stock in an insurance company, being a party to a transaction whereby his note was accepted in payment for stock, and whereby he received stock, was estopped to deny liability of the note in a suit of creditors of the company. The court said: "Under Thompson v. Bank, the receiver's right to recover on the note, to the extent that it represented the amount due by Porter to the corporation necessary to pay for the stock which had been issued to him at its par value, is not open to discussion. That right is clear."

These cases would seem to settle the Texas law. The distinction made by them is clear that, while as between the original parties such notes as are in controversy here would be void, in an action brought by a receiver for the benefit of innocent creditors, the giver of the notes under the circumstances here presented is estopped from setting up their illegality as a defense.

We refer to a number of cases in other states where under somewhat similar constitutional provisions and statutes the giver of

notes for stock was held to be estopped from questioning their legality, showing the tendency of courts to prevent such statutes protecting defaulting stockholders to the injury of innocent people.

In Allen v. Edwards, 93 Miss. 719, 47 So. 382 (Supreme Court of Mississippi), is a discussion of the liability of one subscribing for stock, where a note was given therefor contrary to the provisions of the Mississippi Annotated Code of 1892, § 850. Whether a party was in law a valid subscriber to the stock, the court held immaterial, as he had held himself out by his conduct as being a stockholder, and, inasmuch as he had so done, the law would take him at his word and deal with him as such, and that he was estopped as against creditors to deny that he was a stockholder. The court declined to say whether the subscription at issue was absolutely void, but held it was not void in the sense that creditors could not hold the defaulting subscriber on a note given for the stock.

In Veeder v. Mudgett, 95 N. Y. 295, it was held that the admitted increase of stock by the corporation was illegal, but nevertheless that, as against the creditors of the company, defendant stockholders "by accepting their proportions of the increased stock, by voting for its increase, by taking dividends upon it, and holding it out to those dealing with the company as an actual component of its capital, are estopped from denying the legal validity of the increase and must be held responsible as if it was valid."

In Cox v. Dickie, 48 Wash. 264, 93 P. 523, the action was one by a receiver of a corporation to enforce unpaid stock subscriptions. It was held that subscribers were liable thereon though the corporation was organized under a different name from that at first selected; that it was no defense that defendants contracted with subscribers to purchase the stock at one-half of its par value or that fraudulent representations induced the subscriptions, or that the corporation was defectively organized. Defendants were estopped to set up such defenses. The court pointed out that, as between the corporation itself and the stockholders, these defenses might be good, but that a different rule prevailed as to the creditors of the corporation and the stockholders. Same doctrine, Adamant Mfg. Co. v. Wallace, 16 Wash. 614, 48 P. 415.

The statutes of Alabama provide for proceeding to enforce the liability of the stockholders for judgment against the corporation. Where under that statute a stockholder purchases stock of the corporation for less than the par value, he was held liable to corporate creditors for the difference between the purchase price and the par value, and estopped from making the defense that the transaction was illegal. Vaughn v. Alabama National Bank, 143 Ala. 572, 42 So. 64, 5 Ann. Cas. 665. The court there said: "Although, as between the corporation and the purchasing stockholder, such an arrangement would be valid and binding, so that the corporation could not recover any more from the stockholder than he had agreed to pay for the stock, yet, when the question is raised between the stockholder and a creditor, it is entirely different. When a corporation is organized with a certain amount of capital stock, creditors who deal with it have a right to expect and require that that amount of capital shall be, or has been, paid into the treasury, and no device or agreement between the corporation and the stockholder can relieve the latter from the obligation to the creditors to pay the full amount of the par value of his stock into the treasury. * * * Appellants next raise the question that the transaction was illegal, to wit, the issue of stock without being fully paid up, and hence no recovery can be had, based on that illegal transaction. Respondents are estopped from making that defense."

In Dilzell Engineering Co. v. Lehmann, 120 La. 273, 45 So. 138, 142, it was held by the Supreme Court of Louisiana under a somewhat similar provision of the Constitution as to issuance of stock by corporations that the shares of stock were null, but that the persons to whom the stock was issued were estopped from raising the question of such nullity where the action was for the benefit of the creditors. It was argued in that case that, inasmuch as the stock issue was tainted with illegality, no action could arise against the subscriber. The court said: "How far this may be true, as between the corporation and the subscriber, we need not inquire. It cannot be true as between the creditors of the corporation and the subscriber." And the court said that the question of escaping liability under the circumstances present was not a debatable proposition; that, referring to subscribers, "they are estopped from setting up the invalidity or nullity." The cases cited by appellee do not meet this question of estoppel. We refer to some of them.

All that Western National Bank v. Spencer, 112 Tex. 49, 244 S. W. 123, holds is that an unsecured note given for capital stock is not property within the meaning of the law governing the issuance of stock, and that, where the transferee of an unsecured note

had knowledge that it was given for capital stock of a corporation, it was put upon notice that the transaction was illegal and it could not recover.

In Ater v. Rotan Grocery Co., 189 S. W. 1106 (Tex. Civ. App.), decided November 1, 1916, the note in question was given in payment for increased stock issued by the Copeland Mercantile Company. It was held that the note, as well as the stock, was absolutely void under section 6, art. 12, of the Texas Constitution, even if appellee was an innocent purchaser before maturity for value without notice. This doctrine is contrary to the cases decided since that time, to which we have heretofore referred.

San Antonio Irr. Co. v. Deutschmann, 102 Tex. 201, 105 S. W. 486, 114 S. W. 1174, is a case decided by the Supreme Court of Texas December 23, 1908. It was held that under section 6, art. 12, of the Constitution, an agreement that a subscriber for stock in a corporation should have all the time he might find necessary in which to pay, was void; that no relief could be had under a contract violating the State Constitution. This was an action between the corporation and the stockholder. The question of creditors was not involved. It was an action for damages brought by Deutschmann against the San Antonio Irrigation Company to recover one-third of the value of the irrigation plant. It was held that Deutschmann had no right of action against the corporation. The case was decided many years before Thompson v. Bank of Amarillo, supra.

In Republic Trust Co. v. Taylor, 184 S. W. 772 (Tex. Civ. App.), it was held that the transaction was void as in violation of the constitutional provision; that the consideration of the note was illegal, and its payment could not be enforced, even in the hands of an innocent purchaser for value. This doctrine is contrary to that of the later decisions of the Texas courts.

It is urged that these notes when they were signed were set aside and never set up on the books of the company. A number of times in the brief of appellee the statement is made "that the notes in question along with their companion notes signed by the other directors were not set up or entered upon the books of the Company." Appellee so testifies. But in the testimony of the receiver is found the following:

"Q. When you took over the assets of the Tel-Tex Company where did you find these notes on which you are suing? A. In that red wallet in the vault.

"Q. Did you take over the books also at that time? A. All the effects of the company.

"Q. Were those notes entered on the books of the company? A. Yes, sir.

"Q. Entered on the books of the company? A. Yes, sir; here (indicating) is a transcript made by the bookkeeper of the notes, each and all of them; I will be glad to read them to you."

The court made no finding of fact on this question, and there is just as much evidence that the notes were set up on the books of the company as that they were not.

■ While as between the original parties to these notes it is probable there could be no recovery, a new element, recognized by the courts of Texas, viz. the rights of creditors, has entered into the matter, in view of the fact that the company is in the hands of a receiver. Creditors with no knowledge of the falsity of the certificate as to the increased capital stock have undoubtedly relied thereon. Other stockholders have paid in $75,000 for their stock. The Supreme Court of the United States and the Supreme Court of Texas have laid down the doctrine that the capital stock of an incorporated company is a fund set apart for the payment of its debts and that the creditors have a lien upon it in equity. Creditors have the same right to look to it as to anything else and the same right to insist upon its payment as upon the payment of any other debt due to the company. Sanger v. Upton, 91 U. S. 56, 23 L. Ed. 220; Webster v. Upton, Assignee, 91 U. S. 65, 23 L. Ed. 384; Camden v. Stuart, 144 U. S. 104, 12 S. Ct. 585, 36 L. Ed. 363; Herhold v. Upton, 154 U. S. 624, Appx., and 14 S. Ct. 1203, 23 L. Ed. 892. The contest is not between two parties in pari delicto. While the creditors may not be in the same category as innocent holders of notes, they occupy a status brought about by reliance upon appellee and other directors of the corporation conforming to the law.

■ The courts of Texas have said in the cases we have referred to that the receiver has the right to bring suit under circumstances somewhat similar to those presented here, and that a defendant who signed such notes for stock is estopped from raising the defense sought to be used here. Estoppel is a doctrine of justice based on the principle that he who brings about a misfortune shall not escape the consequences of his act and put the burden upon one more innocent than himself. The defense to these notes is that appellee practically engineered an illegal transaction. Innocent parties purchased stock and paid for it, while he had some secret ar-

rangement with other directors by which he was not to pay the notes which he gave for stock. He was the president of the corporation, as well as a director; he participated in and was the moving spirit at the meeting where it was voted to increase the capital stock; he signed the minutes as president of the company; he acknowledged the statement filed with the secretary of state that 50 per cent. of the increased capital stock had been paid in cash; he knew this was notice to those who would deal with the company and become creditors. He deliberately certified to a false statement upon which creditors could rely, and now, when the receiver is attempting to collect his notes for the benefit of innocent creditors, he seeks to avail himself of a defense based upon his own iniquity. Such defense of course would be abhorrent to equity. It should not be permitted at law. In Daniels v. Tearney, 102 U. S. 415, 420, 26 L. Ed. 187, the Supreme Court says: "The principle of estoppel thus applied has its foundation in a wise and salutary policy. It is a means of repose. It promotes fair dealing. It cannot be made an instrument of wrong or oppression, and it often gives triumph to right and justice, where nothing else known to our jurisprudence can, by its operation, secure those ends. Like the Statute of Limitations, it is a conservator and without it society could not well go on." In that case the court points out that, if the parties are in pari delicto, the law will help neither, but leaves them as it finds them. Certainly the creditors of the Tel-Tex Company are not in pari delicto with appellee. If appellee can escape liability on these notes because he was a party to a wrong, innocent creditors will suffer by his fraud. The language of the court in Farmers' & Mechanics' Bank v. Jenks (Mass.) 7 Metc., 592, 595, is quite appropriate to this situation, viz.: "As to fraud, this, in point of fact, may, and appears to be, well sustained; but it was a fraud in which all parties participated. For this fraud the bank might have been amenable before the proper tribunal; but it is not competent for the maker of this note to take this objection to a recovery of the amount due thereon, in an action instituted by a receiver appointed by this court, and representing the creditors of the bank. It is assets that may well be collected for the purpose of discharging the debts of the bank, or the expenses of closing its concerns under the orders of the court." All elements of an estoppel in pais are present in this case. Sound public policy, business morality, and common honesty call for its application.

Appellee, after active participation in the fraudulent scheme to circumvent the statutes of his state, should not be permitted to avail himself of said fraud to defeat the creditors of the corporation of which he was president and a director.

We are clear that the trial court should have sustained the request of appellant to make the conclusion of law which we have heretofore set forth, to wit, that appellee was estopped from the assertion of the plea of no consideration on the notes sued on in counts 2 and 3 and that judgment should have been entered for the appellant thereon.

The judgment is reversed, and the case is remanded for proceedings in harmony with this opinion.

Reversed and remanded.